*Porter*
*49548*
*12/19*

IN THE ALABAMA SUPREME COURT OF ALABAMA

ANDREW PHILLIP BURDEN,

     APPELLANT,

              Case Number:  CR-02-682

VS.                       Appeal from Circuit
                            Court of Randolph County, AL

STATE OF ALABAMA,

     APPELLEE.

## PETITION FOR WRIT OF CERTIORARI

To the Supreme Court of Alabama:

Comes now your Petitioner, Andrew Phillip Burden, by and through his counsel, Gregory M. Varner, and respectively petitions this Honorable Court for a Writ of Certiorari to issue to the Court of Civil Appeals for the State of Alabama in the above-styled cause under Rule 39 of the <u>Alabama Rules of Appellate Procedure</u>. As grounds therefore, your Petitioner would show the following:

    1.    The Circuit Court of Randolph County convicted Andrew Phillip Burden of murder and sentenced him to life in prison.

    2.    The Alabama Court of Criminal Appeals affirmed the decision of the Randolph Circuit Court on October 24, 2003, a copy of said affirmation with Memorandum being attached hereto as "Exhibit A".

    3.    Your Petitioner filed a timely Application for Re-hearing which was denied on November 21, 2003. A copy of the



notice of this action is attached as "Exhibit B."

4.  Your Petitioner alleges as grounds for the issuance of the requested Writ, the following:

A)  The decision of the Alabama Court of Criminal Appeals was in conflict with prior decisions of the Alabama Supreme Court and the Alabama Court of Criminal Appeals.

The subject appeal was consolidated with the Andrew Phillips Burden's co-defendant's appeal. Andrew Phillip Burden raised two issues concerning the jury instructions.

First, Andrew Phillip Burden claimed on appeal that the jury instructions were inadequate and insufficient to adequately apprize the jury of his primary defense of accident. The Alabama Court of Civil Appeals upheld the actions by the Circuit Court of Randolph County by finding that the "the appellant failed to properly object to the trial court's charge." (Memorandum Opinion, Exhibit A). The Court of Civil Appeals opinion violates the very principles of Robinson v. State, 441 So.2d 1045 (Ala.Crim.App 1983) which it cites as authority. Robinson held that "[a] party seeking a reversal on appeal must not only argue valid grounds of reversible error committed below, but he must also have preserved error for review by proper procedural mechanism." However, your petitioner's trial counsel argued for particular instructions. (R.375-376) The court rejected on record those arguments.

(R.376) Then later, the trial counsel objected to the state's requested charge of law of accident. (R.378-379) Trial counsel referenced his earlier arguments (R.379); nevertheless, the court issued the State's requests yet removed all mention of negligence. (R.389) Wherefore, the trial counsel obeyed the proper procedural mechanisms yet the Alabama Court of Criminal Appeals refused to review the merits of the underlying claims. He stated the facts which supported a charge on accident. The trial counsel objected to the State's proposed instruction on accident. The court rejected all arguments concerning negligent or accidental behavior and issued the State's requested charge on accident without any mention of negligence.

Second, Andrew Phillip Burden claimed on appeal that the trial court erred by failing to instruct the jury on the lesser included offense of criminally negligent homicide. The Alabama Court of Civil Appeals again upheld the actions by the Circuit Court of Randolph County. The Court of Criminal Appeals again cited Robinson and held that "One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge." The Court of Criminal Appeals applied the principle of Robinson too broadly. Prior decisions

of the courts of Alabama allow for criminally negligent homicide in cases where one intentionally draws a gun in response for or anticipation of a confrontation with another. See Reeves v. State, 580 So.2d 49 (Ala.Crim.App 1990), Kennedy v. State, 494 So.2d 792 (Ala.Crim.App.1986).

The logic of the Court of Criminal Appeals extends too far. The State's evidence showed that Andrew Phillip Burden left the scene of the confrontation, entered a house several blocks away, retrieved a shotgun, and then returned the scene of the confrontation. His earlier combatant, Shawn Baker, was not on the scene any longer when he returned. Andrew Phillip Burden testified that someone pulled on his arm and the gun discharged accidentally shooting the victim , Jermicah Foster. According to the logic of the Court of Criminal Appeals, if the gun had discharged while he was retrieving it in the house, he still could not receive an instruction on criminally negligent homicide.

## STATEMENT OF FACTS

The following is the verbatim statement of facts contained within the Application for Rehearing in the Court of Civil Appeals. The Court of Civil Appeals never modified its own Statement of Facts.

As stated earlier, Andrew Phillip Burden was indicted for

the intentional murder of Jermicah Foster. (C.6)

The parties presented conflicting evidence concerning the events relating to the killing of Jermicah Foster. The victim was also known as "Rat." (R.75)

The evidence tended to show that Andrew Phillip Burden and Shawn Baker got into a fight on Sunday, June 17, 2003. (R.79, 346-347) They fought in a residential area on a crowded street. (R.75,79,90) During the fight, Shawn Baker busted Andrew Phillip Burden's eye. (R.347-348) This fight was broken up by Shawn Foster's mother.(R.98)

Andrew Phillip Burden left the scene and later came back with a shotgun searching for Shawn Baker. (R.349) Evidently, Shawn Baker, at some point, was verbally yelling and antagonizing toward Burden. (R.83,351) Andrew Phillip Burden began toward Shawn Baker, but several people were crowding around him. (R.352,353) Shawn Baker then left the scene.

Someone was pulling on his arm. (R.354) The victim, Jermicah Foster, was a part of this crowd trying to dissuade the appellant. (R.353)

The State presented evidence that Jermicah Foster was physically trying to stop Andrew Phillip Burden. (R.353) According to the state's proof, at some point during this commotion, Anthony Eugene Burden yelled at Andrew Phillip

Burden to shoot Jermicah Foster. P.115-116 Then, Andrew Phillip Burden shot Jermicah Foster, killing him. (R.116)

According to Andrew Phillip Burden, he testified that during the commotion, "somebody pulled me and the gun went off." (R.354) He stated that he was not trying to shoot the victim. (R.354) According to Burden's testimony, the shotgun accidently discharged. (R.354) At the time of the shooting, Shawn Baker was not on the streets and near the scene of the shooting. (R.355). He had gone inside at some point. According to Burden, he had "no beef" with Jermicah Foster. (R.361) There was no threat of any confrontation between Jermicah Foster and the appellant. (R.353)

After the shotgun discharged and hit Jermicah Foster, Andrew Phillip Burden and his nephew fled from the scene. (R.355, 359)

## CONCLUSION

Your Petitioner respectfully requests that, after preliminary examination of this Petition and the Brief submitted in support of this Petition, a Writ of Certiorari be granted and that this Court proceed under its rules to review the matters complained of, and to reverse the judgment of the Court of Criminal Appeals, and for such other relief as your Petitioner may be entitled.

Respectfully submitted, this the 9th day of December, 2003.

Gregory M. Varner
Attorney for Petitioner/Appellant
P.O. Box 338
Ashland, AL  36251
(256) 354-5464

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this action, or their attorney(s) of record, with a copy of this document by depositing the same in the United States Mail in an envelope with adequate postage prepaid thereon and properly addressed to him/her/them, or otherwise by facsimile or hand delivery.

Attorney General
11 South Union Street
Montgomery, AL 36130

Clerk, Court of Civil Appeals
300 Dexter Avenue
Montgomery, AL 36104

Gregory M. Varner
Attorney for Petitioner/Appellant

# Court of Criminal Appeals
### State of Alabama
Judicial Building, 300 Dexter Avenue
### P. O. Box 301555
### Montgomery, AL 36130-1555

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges



RELEASED

OCT 2 4 2006

CLERK
ALA COURT CRIMINAL APPEALS

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-02-0682          Randolph Circuit Court CC-01-114 & -115

Anthony Eugene Burden and Andrew Phillip Burden v. State

McMILLAN, Presiding Judge.

Appellant Andrew Phillip Burden ("Phillip") was charged with murder. His nephew, appellant Anthony Eugene Burden ("Tony"), was charged as an accomplice in the crime. Both of them were found guilty at trial. The circuit court sentenced Phillip to life imprisonment and sentenced Tony to 30 years' imprisonment. The State's evidence tended to show that on June 17, 2003, Phillip got into a fight with Shawn Baker on a crowded residential street. Baker's mother Jeanette broke up the fight, and Phillip left the scene. He returned a few minutes later with a shotgun, upset and looking for Baker. Baker began to curse and taunt Phillip, and Phillip walked toward him with the gun. Several people in the crowd, including Ms. Baker and victim Jermicah Foster, tried to take away the shotgun and get Phillip to go home. Phillip's nephew Tony began to yell for Phillip to "kill them" and "[s]hoot

1

him." Foster said, "I haven't done anything to you," and Tony hit him. Tony then told Phillip, "Shoot the MF. Bust them out. Shoot the SB." Phillip's gun went off, and the bullet struck Foster in the head. Foster fell dead in the street, and Phillip and Tony fled. Phillip testified in his own behalf that he did not argue with the victim just before the shooting. He said that he was mad at Baker, not the victim, and that Baker was not outside when the gun went off. He said that Jeanette Baker was hitting him on the arm and then "somebody pulled me and the gun went off." He said that he did not hear Tony yelling or saying anything to him before the gun went off.

I.

Anthony Eugene Burden, Tony, presents three issues on appeal.

A.

Tony contends that the trial court abused its discretion by denying his motion for mistrial because, he says, two jurors behaved improperly. He first argues that one juror, Patricia Boykin had improper contact with prosecution witness Jeanette Baker. He argues that the court should have granted a mistrial because, even though Boykin was an alternate juror, she might have influenced the jury's verdict.

After the jury had found the appellants guilty, Tony's mother told the defense counsel that she had seen juror Patricia Boykin sitting and talking with Jeanette Baker in the hall a few hours earlier. The trial court conducted a hearing, at which Gwendolyn Phillips [Tony's mother], Boykin and Baker testified. Phillips said that she had seen Boykin and Baker conversing, but she did not hear what they said.[1] Patricia Boykin testified that she had seen Baker a few times at church and had said "hello" to her once during the trial,

---

[1]The defense offered affidavits from six witnesses who apparently witnessed a conversation between Boykin and a white woman with "salt and pepper" hair. There is no evidence that the witnesses heard what was said, and their affidavits are not in the record.

when Baker was sitting on a bench in the hall.  She said that
she did not indicate that she knew Baker during voir dire
because she did not know Baker's name until Baker testified.
She said that her conversation with Baker was not improper and
that she did not discuss Baker with any of the other jurors.
Jeanette Baker testified that she had a conversation with a
white woman with gray hair while she was sitting on a bench in
the hall.  She said that the woman she talked to was not one
of the jurors but a person who was waiting to get a shot at
the Health Department.

The defendant has the initial burden of proving that a
juror accused of misconduct did, in fact, commit the act
alleged.  Dawson v. State, 710 So. 2d 472 (Ala. 1997).  The
trial court then has the duty of conducting a painstaking and
careful inquiry, determining whether a remark was made and
whether the remark had a prejudicial effect on the jury.
Taylor v. State, 808 So. 2d 1148 (Ala. Crim. App. 2000).  A
motion for mistrial is a drastic remedy which should be used
only to prevent manifest injustice.  Ex parte Thomas, 625 So.
1156 (Ala. 1993).

Here, the appellant offered evidence of an improper
communication.  The trial court conducted a thorough inquiry,
and the appellant failed to offer any evidence that the
communication could have influenced the jury.  Boykin, an
alternate, did not serve on the jury, and her testimony that
she did not discuss Jeanette Baker with anyone who served on
the jury.  Therefore, the trial court did not abuse its
discretion by determining that a mistrial was not warranted.

B.

Tony contends that a mistrial also should have been
declared because another juror, Detina Jones, intentionally
failed to disclose her personal relationship with the victim's
family.  At the hearing, Tony offered the affidavits of three
witnesses who saw Jones leave the courthouse and ride in a
vehicle with a man named John Wesley Bell.  Tony argues that
Bell is married to the sister of Jeanette Baker, the State's
chief witness and mother of the victim, and that Jones should
have disclosed her relationship with him during voir dire.

When the trial court asked the jurors if they knew the

3

victim or his family, Detina Jones did not respond. Jeanette
Baker then testified that her sister was married to John
Wesley Bell.  However, the appellant failed to offer any
evidence that Detina Jones had been aware of this fact during
voir dire.  Witnesses saw Jones with Bell on October 30.
There was no evidence that Bell had been present, or that
Jones had seen him, prior to voir dire on October 28.

There also was no evidence that Detina Jones would have
known why Bell was present if she had seen him before voir
dire.  Jeanette Baker testified that she recognized Detina
Jones as a person she knew.  She said that she had not
realized that Jones was related to John Wesley Bell or
recognized Jones' name.  There was no evidence that Detina
Jones connected Bell to the victim.  The appellant failed to
meet his initial burden of proving that the juror committed an
act of misconduct.  Therefore, the trial court did not abuse
its discretion by denying his motion for mistrial without a
further investigation.  _Dawson v. State_, supra; _Ex parte
Thomas_, supra.

C.

Tony's third contention is that the trial court erred by
denying his motion for a directed verdict at the close of the
State's case.  He argues that the State failed to introduce
sufficient evidence to convict him of murder because the
testimonies of Jeanette Baker and her family members[2] were
biased.  He argues that, without their testimony, the shooting
was a negligent homicide.

The credibility of witnesses is for the jury to judge and
determine.  _Harris v. State_, 513 So. 2d 79 (Ala. Crim. App.
1987).  This court will not disturb the jury's verdict on
conflicting evidence.  _Dixon v. State_, 476 So. 2d 1236 (Ala.
Crim. App. 1985).  Here, the State offered evidence that when
Shawn Baker taunted Tony's uncle Phillip, Tony yelled for

---

[2]In support of his claim of bias, the appellant filed
several affidavits with his appellate brief.  Exhibits
attached to briefs are not part of the record and may not be
considered on appeal.  _Royer v. State_, 542 So. 2d 1301 (Ala.
Crim. App. 1989).

Phillip to shoot and to kill him. Jermicah Foster tried to
stop Phillip, and Tony hit him and yelled to Phillip, "Shoot
the MF. Bust them out. Shoot the SB." Tony's words and
actions were "calculated to incite or encourage" Phillip to
shoot Foster and therefore were sufficient to make him legally
accountable as an aider or abettor. Scott v. State, 374 So.
2d 316, 318-19 (Ala. 1979).

II.

Andrew Phillip Burden presents two issues on appeal.

A.

Phillip's first contention is that he was prejudiced
because the trial court incorrectly and insufficiently
instructed the jury regarding an accidental shooting, which
was his primary defense. He argues that his own testimony
established a reasonable theory of homicide by accident and
that he was entitled to a more thorough and complete
explanation of the law on this defense. More specifically, he
argues that the court did not explain the elements or the
relative burdens of proof and also failed to instruct the jury
that a not-guilty verdict was warranted if they believed his
testimony regarding this defense.

The trial court instructed the jury as follows in the
oral charge:

"A homicide is not excusable on the ground of
accident or misadventure unless it appears that the
act of the slayer was lawful."

After the charge, the appellant stated that he wanted to renew
the objections he had made during the charge conference. At
the conference, the appellants had discussed charges on
criminally negligent homicide and manslaughter and had stated
that they were requesting a charge on criminally negligent
homicide only. The judge refused to give the charge, stating,
"I don't see how the jury could find a basis of negligence."
After the parties discussed the court's charge on aiding and
abetting and the various verdicts available to the jury, the
defense counsel stated:

"Prosecution requested charge number four, Defendant Phillip Burden vehemently objects to the giving of this charge unless it is given in the (sic) conjunction with the previously criminally negligent homicide. They are intertwined and I guess the term negligence as previously discussed before the Court."

The State's requested Charge No. 4 states:

"A homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was lawful and free from negligence."

The words "and free from negligence" have been crossed out on the written copy, apparently in response to the counsel's objection during the conference. Nothing further regarding Charge No. 4 appears in the record, and the appellants apparently did not request any instructions of their own.

Rule 21.2, Ala. R. Crim. P., provides that a party may not assign as error the court's failing to give a written instruction or the giving of an incomplete oral charge, unless the party objects before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of the objection. Here, the appellant failed to properly object to the trial court's charge. An appellant is bound by his objections at trial. Reynolds v. State, 484 So. 1171 (Ala. Crim. App. 1985). A failure to object and get a ruling on the record preserves nothing to review. Robinson v. State, 441 So. 2d 1045 (Ala. Crim. App. 1983).

B.

Phillip contends that the trial court erred in refusing to charge the jury on the lesser included offense of criminally negligent homicide. He argues that the jury could have reasonably inferred that his act of retrieving a loaded weapon and searching for Shawn Baker on a crowded street showed that he failed to perceive a substantial and unjustifiable risk that the weapon would discharge. He argues that neither "the victim nor anyone else posed a threat of

6

imminent confrontation" because he was searching for Shawn Baker, who was not on the scene. He further argues that because he did not wrestle over the gun or fire the gun at Baker and accidentally hit Foster, there also was "no imminent threat that the gun might discharge." He argues that because he testified that he had been drinking alcohol earlier in the day, the jury also could have inferred that the alcohol affected his ability to perceive the risk of his act.

The Commentary to § 13A-6-4, Ala. Code 1975, explains the difference between reckless behavior and criminal negligence:

> "A common denominator in both is that in each instance the underlying conduct must involve a `substantial and unjustifiable risk' that a result or circumstance described in the penal statute will occur or exists. The reckless offender is aware of the risk and `consciously disregards' it. On the other hand, the criminally negligent defendant is not aware of the risk created (`fails to perceive') and, therefore, cannot be guilty of consciously disregarding it."

The appellant testified that he had retrieved the loaded shotgun in response to his earlier argument with Shawn Baker. "One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence." Robinson v. State, supra, at 1047. Here, it was undisputed that Phillip brandished a loaded gun in a crowd, seeking confrontation. The risk that the gun might fire was not lessened because his original target went inside. Compare Reeves v. State, 580 So. 2d 49 (Ala. Crim. App. 1990)(charge on criminally negligent homicide  proper because defendant removed clip from pistol and thought gun was no longer loaded); Kennedy v. State, 494 So. 2d 792 (Ala. Crim. App. 1986)(charge on criminally negligent homicide proper because, in attempt to avoid confrontation, defendant retrieved gun before husband could get it).

With regard to the issue of intoxication, this court stated in Williams v. State, 506 So. 2d 368 (Ala. Crim. App. 1986):

"The fact that the defendant had several drinks
before the fatal encounter with the victim did not
entitle him to a charge on criminally negligent
homicide.  Even if he had been intoxicated, that
circumstance would not have been legally sufficient
to render him unaware of the risk he created by
drawing his pistol.  Ala. Code 1975, § 13A-3-2(b).
(`When recklessness establishes an element of an
offense and the actor is unaware of a risk because
of involuntary intoxication, his unawareness is
immaterial in a prosecution for that offense.')
Voluntary intoxication can never, therefore, reduce
manslaughter to criminally negligent homicide."

For the foregoing reasons, the convictions and sentences
of both appellants are due to be affirmed.

AFFIRMED.

Cobb, Baschab, Shaw, and Wise, JJ., concur.

8

COURT OF CRIMINAL APPEALS
STATE OF ALABAMA
JUDICIAL BUILDING, 300 DEXTER AVENUE
P.O. BOX 301555
MONTGOMERY, AL 36130-1555

*H. W. "Bucky" McMILLAN*
Presiding Judge
*SUE BELL COBB*
*PAMELA W. BASCHAB*
*GREG SHAW*
*A. KELLI WISE*
Judges

*Lane W. Mann*
Clerk
*Wanda K. Ivey*
Assistant Clerk
(334) 242-4590
FAX (334) 242-4689

Hon. Kim S. Benefield, Circuit Clerk

Hon. Nathaniel Owens, Attorney

Hon. Gregory M. Varner, Attorney

RE: **CR-02-0682**
Anthony Eugene Burden and Andrew Phillip Burden
v. State of Alabama (Appeal from Randolph
Circuit Court: CC01-114; 115).

Dear Sir or Madam:

    You are hereby notified that on November 21st, 2003 the following action was taken
in the above referenced cause by the Court of Criminal Appeals:

    Applications for Rehearing Overruled

**Lane W. Mann**
**Clerk**
**Court of Criminal Appeals**

LWM/lk

NOTE: If you are filing a petition for certiorari with the Alabama Supreme Court, Rule
39(e), Alabama Rules of Appellate Procedure, states that a copy of the petition shall be
filed with this Court.  Please be advised that your failure to comply with this requirement
could result in the issuance of a premature Certificate of Judgment.

CR-02-682

IN THE ALABAMA COURT OF CRIMINAL APPEALS

ANTHONY EUGENE BURDEN
and
ANDREW PHILLIP BURDEN,

APPELLANT,

VS.

STATE OF ALABAMA,

APPELLEE.

PETITION FOR WRIT OF CERTIORARI FROM
THE ALABAMA COURT OF CRIMINAL APPEALS

BRIEF OF PETITIONER IN SUPPORT OF HIS
PETITION FOR WRIT OF CERTIORARI

Counsel for Appellant
Hon. Gregory M. Varner
P.O. Box 338
Ashland, AL 36251
(256) 354-5464

# TABLE OF CONTENTS

Table of Contents                    2

Issues Presented                     3

Table of Authorities                 4

Argument                             5

ISSUES PRESENTED

I.   DID ANDREW BURDEN ADEQUATELY PRESERVE FOR REVIEW THE
     INSUFFICIENCY AND INADEQUACY OF THE TRIAL COURT'S
     CHARGES ON THE LAW OF ACCIDENT.

II.  WHETHER THE TRIAL COURT PREJUDICIALLY ERRS WHEN IT
     REFUSES TO CHARGE THE JURY CONCERNING A LESSER INCLUDED
     OFFENSE WHEN CLEAR EVIDENCE WAS PRESENTED THAT
     SUPPORTED SUCH AN INSTRUCTION

## TABLE OF AUTHORITIES

Deramus v. State, 565 So.2d 1167                    12
     (Ala.Crim.App.1990)

Houston v. State, 798 So.2d 704                     14
     (Ala.Crim.App. 2000)

Kennedy v. State, 494 So.2d 792                     15
     (Ala.Crim.App.1986).

Koppersmith v. State, 742 So.2d 206                 9,11,13
     (Ala.Crim.App. 1999)

Lovell v. State, 521 So.2d 1346                     13
     (Ala.Crim.App 1987)

McConnico v. State, 551 So.2d 424                   11
     (Ala.Crim.App. 1988)

McLaughlin v. State, 586 So.2d 267                  9
     (Ala.Crim.App. 1991)

Reeves v. State, 580 So.2d 49                       15
     (Ala.Crim.App 1990)

Robinson v. State, 441 So.2d 1045                   14,15
     (Ala.Crim.App.1983)

Watson v. State, 504 So.2d 339                      11,12
     (Ala.Crim.App 1986)

## ARGUMENT

**I. ANDREW PHILLIP BURDEN ADEQUATELY PRESERVED FOR REVIEW THE COURT'S ERRONEOUS INSTRUCTION ON THE LAW OF ACCIDENT WHEN HE PRESENTED ARGUMENT REGARDING THE LAW OF ACCIDENT AND THE N TIMELY OBJECTED TO THE COURT'S PROPOSED INSTRUCTION.**

Andrew Burden raised two issues on appeal. First, Andrew Burden challenged the adequacy of the jury charge on accident. In light of the evidence of accident and especially considering its significance to the defense, Andrew Phillip Burden was entitled to a full and complete explanation of the law of homicide by accident. However, the jury was barely made aware that homicide by accident was even an issue. The court never explained the elements of the defense. The Court never even explained the relative burdens of proof concerning this affirmative defense. The trial court never mentioned that a verdict of not guilty was warranted if the jury believed Burden's testimony.

The Court of Criminal Appeals rejected this argument solely because "the appellant failed to properly object to the trial court's charge." (Memorandum p.6)

The trial court charged the jury on the primary defense of Andrew Burden as follows: "[a] homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was lawful." (R.389)

The record demonstrates that the trial counsel did object to the charge on homicide by accident. This objection occurred against the prosecution's request for charge. (R.378-379. The State requested the Court to charge the jury as follows "a homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was lawful and from negligence," labeled as Charge No.4. 'C.31

Andrew Burden's trial counsel stated:

> "Prosecution requested charge number four, Defendant Phillip Burden vehemently objects to the giving of this charge unless it is given in the conjunction with the previously requested charge of criminally negligent homicide. They are intertwined and I guess the term negligence as previously discussed before the court."

(R.379) The court overruled this objection by stating "[w]ell, we have got that on the record." (R.379) The court then gave the prosecution's requested charge less :"and from negligence." (R.389) The trial court had previously specifically rejected a request for a charge on a criminally negligent homicide as a lesser included offense.

Earlier in the trial concerning the jury charges, Burden presented a lengthy and interwined argument on the facts which support charges of accident and criminally negligent homicide.

Andrew Phillip Burden whereby incorporated into his objection to the charge on accident his earlier arguments

relating to criminally negligent homicide. He earlier argued that the evidence "specifically pointed to facts of his own testimony, as well as the testimony of other witnesses, that this was an act that was an accident." (P.375)

The trial court was insistent to not present the jury with any instruction concerning negligence. The court stated that "I don't see how the jury could find a basis of negligence." (R.376) In addition to refusing to give the criminally negligent homicide instruction, he further modified the accident instruction to remove any language regarding negligence. The trial court whereby completely removed the primary defense of Andrew Burden from consideration of the jury.

The law of accident and the law of criminally negligent homicide are intertwined. The trial court rejected all the arguments concerning negligence. (R.376) Andrew Burden had intertwined his arguments concerning negligence and accident. In context, the court rejected all the arguments made by the trial counsel for a charge of criminally negligent homicide but also homicide by accident in one swoop. (R.376)

This was further evidenced by the final instruction which excluded any language regarding negligence. (R.389) The trial

court thereby rejected the arguments of accident. In rejecting these arguments, the trial court repeatedly stated "I think we have it all on the record," (P.376, and "Well, was have got that on the record." (R.379)

Through the testimony of Andrew Phillip Burden, the Defense presented evidence of accident. Phillip testified about the events of the killing of Jermicah Foster a.k.a. "Rat." He first testified that he and Shawn Baker had been in a fight. He later came back to the scene with a shotgun looking for Shawn Baker. A crowd gathered around him. He testified that during the commotion on the street, "somebody pulled me and the gun went off." (R.354) He stated that he was not trying to shoot the victim Foster. (R.354) He further specifically stated that the gun discharging was an "accident." (R.354, 359) When he returned to the scene, he was going after Shawn Baker and not the victim. According to testimony, the victim and the appellant "didn't have no beef against each other," according to his testimony. (R. 361) He was not shooting at Shawn Baker, either; Baker was not even at the scene at the time of the shooting. (R.355)

Andrew Phillip Burden never denied shooting Jermicah Foster; he only claimed to have shot him when his shotgun

discharged accidentally. Nevertheless, in light of this clear testimonial evidence, the trial court only gave an extremely limited instruction concerning the law of accidental homicide.

The Defendant was entitled to a much more thorough and complete explanation of the law. "Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however, weak, insufficient, or doubtful." Koppersmith v. State, 742 So.2d 206, 208 (Ala.Crim.App. 1999)

Burden's testimony presented the jury with a reasonable excuse to the shooting. In Alabama, "a homicide by accident is an excusable homicide. It is an unintended homicide which occurs in the course of performing a lawful act, without criminal negligence." McLaughlin v. State, 586 So.2d 267, 272 (Ala.Crim.App. 1991) "Where the death of a human being is the result of accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer." McLaughlin at 273. Wherefore, when evidence of an accidental shooting is presented, the Court should, at least, instruct that, if the jury has such evidence, then that finding would require a verdict of not guilty. In Burden's trial, even this basic explanation was not offered.

The instruction given unto the jury was wholly inadequate. Considering the placement within the entire instruction and its relative length, the court might as well not have mentioned accident at all. The jury instruction given should have accompanied by a much larger and specific definition of homicide by accident. Instead, this isolated modifier was inserted haphazardly between an extensive and lengthy instruction on the elements of murder and an equally extensive instruction on complicity.

By failing to instruct the jury on the law of homicide by accident, the trial court substantially prejudiced and undermined the primary defense of Andrew Phillip Burden. Andrew Phillip Burden took the stand and testified that the gun discharged accidentally. If believed, he would be entitled to an acquittal. However, the jury was not instructed that this was even an option. Wherefore, the court committed reversible error and Andrew Phillip Burden was denied a fair trial because of this error.

**II. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT REFUSED TO CHARGE THE JURY CONCERNING A LESSER INCLUDED OFFENSE WHEN CLEAR EVIDENCE WAS PRESENTED THAT SUPPORTED SUCH AN INSTRUCTION AND THE COURT OF CRIMINAL APPEALS VIOLATED PRIOR**

**CASE LAW BY AFFIRMING SUCH ERROR.**

In addition to the above, the Court of Criminal Appeals
erred by affirming the trial court's refusal to charge the
jury on the lesser included offense of criminally negligent
homicide. Criminally negligent homicide may be a lesser
included offense of murder.

Andrew Phillip Burden was indicted for the intentional
murder of Jermican Foster. Criminally negligent homicide may
be a lesser included offense of murder. See Watson v. State,
504 So.2d 339 (Ala.Crim.App 1986)

"An individual accused of the greater offense has a
right to have the court charge on the lesser included
[offense] in the indictment, when there is a reasonable
theory from the evidence supporting his position."
Koppersmith at 208. in fact, "[i]t is the safer rule to
charge upon all the degrees of homicide included in the
indictment, when a party is on trial for murder unless it is
perfectly clear to the judicial mind that there is no
evidence tending to bring the offense within some particular
degree." McConnico v. State, 551 So.2d 424, 426
(Ala.Crim.App. 1988)

Andrew Phillip Burden presented direct and indirect

evidence from which a reasonable theory of criminally negligent homicide could be derived. In light of the above referenced case law and policy, he was entitled a charge in criminally negligent homicide, the lesser included offense of murder.

Andrew Phillip Burden testified that "somebody pulled [him] and the gun went off," that the gun discharged accidentally, and that he was not trying to shoot the victim nor Shawn Baker. (R.354-355) "Under Alabama law, an accidental killing may support a conviction for murder, manslaughter, or negligent homicide, depending on the circumstances of the case." Watson v. State, 504 So.2d 339 (Ala.Crim.App 1986)

However, the courts have restricted the requirement that criminally negligent homicide be charged in certain homicide cases. "An instruction of criminally negligent homicide is proper only where the victim's death was caused by the inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware." Deramus v. State, 565 So.2d 1167 (Ala.Crim.App.1990)

The courts typically describe criminally negligent homicide in comparison with reckless homicide. "The

difference between the terms 'recklessly' and 'negligently' is one of kind. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it." Koppersmith at 103. "A negligent actor disregards a risk of which he 'should have been aware,' rather than consciously disregarding a risk as is required for recklessness." Lovell v. State, 521 So.2d 1346, 1351 (Ala.Crim.App 1987)

In the present case the evidence, at least, supports a reasonable theory of accidental killing by criminally negligent homicide. The evidence demonstrated the defendant and Shawn Baker had been involved in a fight, in which, the defendant had received several blows. After the fight had been broken up, the Defendant left the scene of the fight. He went and retrieved a shotgun and walked back to the scene with the fight. He was searching for Shawn Baker. However, a crowd of people was still on the streets. Several people tried to intervene in the matter and to calm the defendant. In fact, they crowded around the defendant. The victim, Jermicah Foster, was part of this crowd. Andrew Phillip Burden did not have any "beef" with the victim. In fact, Shawn Baker was no longer on the scene but had entered a

residence at this point.  R.171) Someone pulled on his arm
and the gun discharged, shooting the victim.

A jury reasonably could infer that the act of
retrieving a loaded weapon and searching for Shawn Baker on
a crowded street indicates at a minimum that he failed to
perceive a substantial and unjustifiable risk that the
weapon would discharge. See Houston v. State, 798 So.2d 704,
709 (Ala.Crim.App. 2000)(a defendant that retrieved a
firearm and then entered a house in search of his victim was
rightly convicted of criminally negligent homicide).

The Court of Criminal Appeals flatly rejected this
argument because the Andrew Phillip Burden retrieved a gun.

However, this case is distinguishable from the line of
cases which deny the applicability of criminally negligent
homicide to situations where the accused brandished a
firearm. See Robinson v. State, 441 So.2d 1045
(Ala.Crim.App.1983). These cases support the proposition
that in fights or anticipated fights, if a persons wields a
firearm against the joint-combatant, he cannot plead
criminally negligent homicide. In the present case, the
victim nor anyone else posed a threat of imminent
confrontation. Andrew Burden was in search of Shawn Baker

and not the victim. The victim and Andrew Burden did not
wrestle over the gun, nor did Andrew Phillip Burden shoot at
Shawn Baker and accidently hit Jermicah Walker. At the time
of the shooting, Shawn Baker was not on the scene.
Accordingly, there was no imminent threat that the gun might
discharge as in Robinson and its progeny. Further, because
the imminent threat of confrontation was not present, it
could not be said that he was "certainly aware of the risk
that the gun might discharge." Robinson at 1347

    Prior decisions of the courts of Alabama allow for
criminally negligent homicide in cases where one
intentionally draws a gun in response for or anticipation of
a confrontation with another.  See Reeves v. State, 580
So.2d 49 (Ala.Crim.App 1990), Kennedy v. State, 494 So.2d
792 (Ala.Crim.App.1986).

    The logic of the Court of Criminal Appeals extends too
far. According to the Court of Criminal Appeals, if Andrew
Burden had retrieved the gun, stayed in the house, and
discussed the matter with his friends but only then did gun
accidently discharged, an instruction on criminally
negligent would still be unavailable.

    Reeves and Kennedy support the proposition that the

court must consider all circumstances surrounding the
brandishing of the gun which include the imminence of
confrontation and the absence of the joint-combatant.

Wherefore, because evidence to support a reasonable
theory of criminal negligence was present, Burden was
entitled to such a charge. The Court's refusal to grant such
a charge prejudiced Andrew Phillip Burden to an extent that
he did not receive a fair trial. His acts, while very
possibly legally negligent, did not rise to the level of
reckless *per se*.

Gregory M. Varner

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all
parties in this action, or their attorney's of record, with
a copy of this document by depositing the same in the United
States Mail in an envelope with adequate postage prepaid
thereon and properly addressed to him/her/them, or otherwise
by facsimile or hand delivery.

Attorney General                  Clerk, Court of Civil Appeals
11 South Union Street             300 Dexter Avenue
Montgomery, AL 36130              Montgomery, AL 36104


_____
Gregory M. Varner
Attorney for Petitioner/Appellant