No. CR-02-0682

In the COURT of CRIMINAL APPEALS
of ALABAMA

———————◆———————

ANDREW PHILLIP BURDEN,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

———————◆———————

On Appeal From the Circuit Court of
Randolph County (CC-01-114 and CC-01-115)

**BRIEF OF APPELLEE**

William H. Pryor Jr.
*Attorney General*

Robin Blevins Scales
Assistant Attorney General

John Porter
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300*

May 27, 2003

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. According to Alabama Rule of Appellate Procedure 34(a)(3), oral argument should not be allowed if "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Contrary to Pace's contention, none of the issues presented involve "a matter of first impression in Alabama," the necessary facts for this Court's decision can be gleaned from the record, and the issues are adequately presented in the parties' briefs.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.......................... i

TABLE OF CONTENTS......................................... ii

TABLE OF CASES AND AUTHORITIES........................... iii

STATEMENT OF THE CASE...................................... 1

STATEMENT OF THE ISSUES................................... 3

STATEMENT OF THE FACTS.................................... 3

STANDARD OF REVIEW........................................ 7

SUMMARY OF THE ARGUMENT................................... 8

ARGUMENT................................................. 10

I.    Phillip Burden's Argument that the Trial Court's Jury
      Instruction on Accident Was Incorrect and Insufficient
      Is Not Preserved for Review Because There Is No
      Indication in the Record that the Trial Court Made a
      Direct Ruling on His Objection To the Accident
      Instruction Given and Because Burden Did Not Request
      a More Adequate Instruction on Accident............. 10

II.   The Trial Court Properly Denied Phillip Burden's
      Request to Instruct the Jury on the Elements of
      Criminally Negligent Homicide Because There Was No
      Reasonable Theory From the Evidence To Support
      Such a Charge....................................... 14

CONCLUSION............................................... 20

CERTIFICATE OF SERVICE................................... 21

## TABLE OF CASES AND AUTHORITIES

**Cases**

Houston v. State, 798 So. 2d 704, 709 (Ala. Crim.
  App. 2000) .............................................. 18

Lewis v. State, 741 So. 2d 452, 455 (Ala. Crim.
  App. 1999) .............................................. 12

P.D.F. v. State, 758 So. 2d 1118, 1119 (Ala. Crim.
  App. 1999) .............................................. 12

Robinson v. State, 441 So. 2d 1045, 1047 (Ala. Crim.
  App. 1983) .............................................. 16

Williams v. State, 506 So. 2d 368, 368 (Ala. Crim.
  App. 1986) .............................................. 15

Williams v. State, 518 So. 2d 888, 889 (Ala. Crim.
  App. 1987) .............................................. 14

**Other Authorities**

Code of Alabama (1975),

  Section 13A-2-2(4) ...................................... 14

iii

## STATEMENT OF THE CASE

This is the direct appeal from a conviction for murder. The appellant, Andrew Phillip Burden ("Phillip Burden"), was indicted, along with his nephew, Anthony Eugene Burden ("Anthony Burden"[1]), by the Randolph County Grand Jury for the murder of Jermicah Foster on September 7, 2001. (C. 6-7) Phillip Burden pleaded not guilty to this charge on September 18, 2001. (C. 59)

The Burdens were tried together before a jury on murder charges on October 28-30, 2002. (R. 1-398) The Honorable Ray D. Martin presided. (R. 1) At the close of the State's case, the Burdens moved for judgment of acquittal, arguing that the State had failed to meet its burden to prove murder. (R. 296) Judge Martin denied this motion. (R. 297) During the charge conference, Phillip Burden requested that Judge Martin instruct the jury on the elements of criminally negligent homicide. (R. 375) Judge Martin denied this request and stated, "I think we have it all on the record." (R. 376) Phillip Burden also objected to the giving of "State's Requested Jury Charge No. 4"

---

[1] The appeal of Anthony Burden's conviction is addressed in a separate brief.

which provided, "A homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was lawful and free from negligence." (C. 20; R. 378-379) The record does not reflect that Judge Martin directly ruled upon this objection, but does indicate that the phrase "and free from negligence" was deleted from the requested instruction and that Judge Martin delivered the remainder of the instruction to the jury. (C. 20; R. 389) After Judge Martin delivered the instructions to the jury, Phillip Burden renewed his objections made during the charge conference. (R. 393)

On October 30, 2002, the Burdens were both convicted by a jury of murder. (C. 1; R. 396)

On December 2, 2002, Judge Martin sentenced Phillip Burden to life imprisonment. (R. 466) Phillip Burden filed a "Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial" on December 30, 2002. (C. 101, 108) Judge Martin denied this motion on January 30, 2003. (C. 106) Phillip Burden timely filed notice of appeal on February 6, 2003. (C. 55) This appeal follows.

## STATEMENT OF THE ISSUES

1.   Is Phillip Burden's argument that the trial court's jury instruction on accident was incorrect and insufficient unpreserved for review because there is no indication in the record that the trial court made a direct ruling on his objection to the accident instruction given and because Burden did not request a more adequate instruction on accident?

2.   Did the trial court properly deny Phillip Burden's request to instruct the jury on the elements of criminally negligent homicide because there was no reasonable theory from the evidence to support such a charge?

## STATEMENT OF THE FACTS

On Sunday, June 17, 2001, Phillip Burden and his relative, Kenny "Pokey" Burden, Jr., visited the house of reputed bootlegger Ernest "Tag" Taylor, where a large number of people of Roanoke, Alabama met to have drinks. (R. 75-76, 94, 101-102, 182, 345-346)  On his way out of Taylor's house that evening, Phillip saw Calvin LeShawn "Shawn" Baker and Jermicah "Rat" Foster standing at the back of Pokey's car.  (R. 346)  After Phillip told Rat to

3

stop threatening his family, he and Rat shook hands. (R. 347) When Phillip attempted to do the same with Shawn, however, Shawn refused to shake his hand and called him "all kinds of motherfucker names." (R. 346) Phillip and Shawn then became engaged in a fist fight, and both fell off into some hedges. (R. 347) Shawn's girlfriend began hitting Phillip with a shoe, causing his eye to begin bleeding. (R. 347-348) After being informed that her son was fighting at Tag Taylor's house, Shawn's mother, Jeanette Baker, ran up the street and witnessed Shawn and Phillip fighting in the hedges. (R. 162-164) After Shawn and Phillip were separated, Ms. Baker walked with her son across the street and directed him to go up the street. (R. 98, 165) After the fight, Phillip, still angry at Shawn, retrieved a sawed-off shotgun and returned to the area around Tag Taylor's house. (R. 349) As he walked up the street, he saw Shawn jumping up and down on top of a car, telling him "to come up the road motherfucker." (R. 350) As Phillip walked up the street with the gun, Ms. Baker pleaded with him not to go up and shoot. (R. 167) Phillip, not recognizing who she was, turned the gun on Ms. Baker and stated, "B, I'll kill you." (R. 168) When Ms.

4

Baker's daughter told Phillip who had just spoken, Phillip turned to Ms. Baker, apologizing and asking to hug her. (R. 168)  Phillip hugged Ms. Baker and, as he talked with her, some people began grabbing and wrestling with him. (R. 168)

At this point, the testimony of the State's and Defense witnesses diverged.  Ms. Baker testified that she saw Phillip's brother, James Burden, up the road with a pistol aimed at Shawn.  (R. 168)  She ran up the road, pleaded with James not to shoot, and told Shawn to get in the house.  (R. 168)  James stated, "I'm going to respect you too" and hugged Ms. Baker.  (R. 169)  According to Ms. Baker, Phillip and the appellant Anthony "Tony" Burden, Phillip's nephew, were walking towards them up the street. (R. 169)  After Phillip stated, "I'll blow your [] brains out," Ms. Baker begged Phillip not to shoot Rat, who was Phillip's apparent target, and Phillip backed off.  (R. 169)  Ms. Baker testified that Tony then began telling Phillip, "I said kill them.  Shoot him."  (R. 170)  After Rat said, "I ain't done nothing to you," Tony hit Rat. (R. 170)  Rat then turned and began to run, but Tony again yelled, "Shoot the MF.  Bust them out.  Shoot the SB."  (R.

5

170)  According to Ms. Baker, Phillip then shot Rat, causing him to fall hard on the ground.  (R. 170)  As Ms. Baker looked down at Rat, seeing blood and "his brains blown out," she called Rat's name.  (R. 170)  Phillip and Tony began backing up before running down the road.  (R. 170)  Although Ms. Baker called for help, nobody came before the police and, later, the deputy acting coroner arrived to declare Rat dead at the scene.  (R. 170, 259-260)  The testimony of Ms. Baker's niece, Latarsha Winston, was substantially similar to that of Ms. Baker.  (R. 105-140)

Phillip Burden testified that he was carrying the sawed-off shotgun up the street looking for Shawn and wanting some "get back."  (R. 362)  He admitted he had been drinking.  (R. 362)  He further testified that he did not see Tony at the scene or hear him yelling.  (R. 362)  According to Phillip, after he hugged Ms. Baker, he calmed down.  (R. 151)  He then saw Shawn jumping up and down on a car and telling him "to come on up the road," however, and began heading towards him again.  (R. 352)  On the way up the road, he saw Rat who was apparently trying to tell him to stay back.  (R. 352)  Phillip testified, however, that

they both agreed that they had "no beef with each other,"
and he told Rat, "You need to just go on."  (R. 352)
According to Phillip, a crowd began to surround them and
Ms. Baker told Phillip "Son, don't do that," hitting him on
the arm.  (R. 353-354)  Somebody then pulled on the gun,
which discharged.  (R. 354)  After realizing his gun had
fired by accident, he backed off and fled.  (R. 355)  He
testified that he waited a couple of weeks before turning
himself in because he was scared of the police.  (R. 356)


## STANDARD OF REVIEW

Rule 21.3 of the Alabama Rules of Criminal Procedure
provides:

> No party may assign as error the court's . . .
> failing to give a written instruction . . . unless
> he objects thereto before the jury retires to
> consider its verdict, stating the matter to which
> he objects and the grounds of his objection.

In Finch v. State, 715 So. 2d 906, 912 (Ala. Crim. App.
1998), this Court stated, "An objection [to the refusal of
requested charges] must be specific enough to put the trial
court on notice of any alleged error and provide the court
with an opportunity to correct any error if necessary."  A
party must gain an adverse ruling from the trial court to

7

preserve an issue for appellate review.  Lewis v. State,

741 So. 2d 452, 455 (Ala. Crim. App. 1999).

This Court stated in Ward v. State, 610 So. 2d 1190,

1194 (Ala. Crim. App. 1992):

> A trial court has broad discretion in
> formulating its jury instructions, providing they
> are an accurate reflection of the law and facts of
> the case.  Coon v. State, 494 So. 2d 184 (Ala. Cr.
> App. 1986).  When requested charges are either
> fairly and substantially covered by the trial
> judge's oral charge or are confusing, misleading,
> ungrammatical, not predicated on a consideration
> of the evidence, argumentative, abstract, or a
> misstatement of the law, the trial judge may
> properly refuse to give such charges.  Ex parte
> Wilhite, 485 So. 2d 787 (Ala. 1986).

## SUMMARY OF THE ARGUMENT

On appeal, Phillip Burden appears to attack the

correctness of the accident instruction delivered by the

trial court to the jury as well as the trial court's

alleged failure to give a more adequate instruction on

accidental homicide.  Neither of these arguments is

preserved for review.  Although Burden raised an objection

to the giving of the accident instruction requested by the

State, the trial court never directly ruled upon such

objection.  Furthermore, Burden never requested the trial

court to give a more adequate instruction on accidental

homicide.  Even had the issue been preserved, it would have
been without merit because all of the evidence, including
Burden's own testimony, pointed to a level of intent
greater than mere accident.

Phillip Burden also argues that the trial court abused
its discretion by denying his request to instruct the jury
on criminally negligent homicide.  There was no evidence at
trial, however, indicating that Burden shot the victim
through criminal negligence.  Burden's own testimony
indicated that he recklessly carried a shotgun up a crowded
street in anticipation of gaining revenge against someone
with whom he had just been engaged in a fist-fight.
Therefore, the trial court did not abuse its discretion by
refusing to instruct on criminal negligence.

9

**ARGUMENT**

I.   **Phillip Burden's Argument that the Trial Court's Jury Instruction on Accident Was Incorrect and Insufficient Is Not Preserved for Review Because There Is No Indication in the Record that the Trial Court Made a Direct Ruling on His Objection To the Accident Instruction Given and Because Burden Did Not Request a More Adequate Instruction on Accident.**

Phillip Burden argues that the trial court's instruction on accident was insufficient.  Brief of the Appellant, pp. 8-12.  His argument appears to concentrate on the trial court's alleged failure to give an adequate instruction on accident, as opposed to the alleged incorrectness of the accident instruction actually delivered to the jury.  Brief of the Appellant, pp. 8-12.  The trial court, however, never made a direct ruling on the instruction given and Phillip Burden never requested that a more adequate instruction be given.  Therefore, neither argument – whether a more adequate accident instruction should have been given or whether the accident instruction given was incorrect – is preserved for review.

To the extent that Phillip Burden argues that the accident instruction actually delivered to the jury was an incorrect statement of the law or misleading, such argument is not preserved for review.  During the charge conference,

Phillip Burden objected to the giving of "State's Requested Jury Charge No. 4" which, as indicated in the record, provided, "A homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was lawful and free from negligence." (C. 20; R. 378-379)  After Anthony Burden joined in this objection, the conversation immediately turned toward whether defense counsel was "putting the Court in a box by asking the Judge not to instruct on manslaughter." (R. 379)  There is no indication in the record that, during the charge conference or at any other time in open court, the trial court made any direct ruling on this objection.  The only indication that the trial court might have taken some action based upon the objection is found in the written requested instruction, which shows that the words "and free from negligence" had been crossed out. (C. 20)  The remainder of the written instruction corresponds to the actual instruction orally delivered to the jury. (C. 20; R. 389)  It is not apparent from the record who crossed the words from the written instruction and, more importantly, whether Phillip Burden acquiesced to this amendment and the subsequent instruction given to the jury.  The objection he

made during the charge conference focused on how the proposed accident instruction and the criminally negligent homicide instruction were "intertwined." (R. 378-379) This objection does not appear to correspond with any of the arguments raised on appeal and there is nothing in the record showing that the trial court ever ruled on it. Without an adverse ruling, there is nothing for this Court to review. Lewis v. State, 741 So. 2d 452, 455 (Ala. Crim. App. 1999). Because no further specific objection to the instruction given appears in the record, this Court must assume that Phillip Burden acquiesced to the giving of the instruction.

Phillip Burden's main complaint on appeal regarding the accident instruction focuses on the trial court's alleged failure to give a "much larger and specific definition of homicide by accident" that would adequately allow the jury to take into consideration such a defense. Brief of the Appellant, p. 12. The record does not reflect, however, that Phillip Burden ever requested any such instruction on accidental homicide. Therefore, the issue is not preserved for review. See P.D.F. v. State, 758 So. 2d 1118, 1119 (Ala. Crim. App. 1999)(failure to request instruction and

12

to object to trial court's failure to give instruction waives issue for appellate review).

Even if the issue were preserved, no accidental homicide instruction was warranted under the evidence.  As discussed below, even Phillip Burden's own testimony showed, at the very least, that he was guilty of recklessness.  Burden attempts to place emphasis on the fact that the shooting occurred in a high crime area. Brief of the Appellant, p. 11.  This fact, however, could only be relevant if there were some evidence that Phillip Burden was carrying the shotgun for his own protection. All of the evidence pointed to the conclusion that he was carrying the shotgun because he was seeking revenge – not because he was afraid for his safety.  If Phillip Burden had been truly concerned about his safety, he would not have even returned to the scene after the fight had broken up between him and Shawn Baker. In fact, he testified himself that he was mad at, but not afraid of, Shawn Baker. (R. 361)  Therefore, the fact that the area was high-crime only indicates that Phillip Burden's decision to seek revenge was not an isolated incident and provides no basis for construing the shooting as an accident.

II.  **The Trial Court Properly Denied Phillip Burden's Request to Instruct the Jury on the Elements of Criminally Negligent Homicide Because There Was No Reasonable Theory From the Evidence To Support Such a Charge.**

Phillip Burden argues that the trial court erred in failing to instruct the jury on the elements of criminally negligent homicide.  Brief of the Appellant, pp. 12-17. Because there is no reasonable theory based upon the evidence to support a conviction for criminally negligent homicide, however, the trial court did not abuse its discretion when it refused to give such an instruction.

As Phillip Burden correctly states, a defendant is entitled to an instruction on a lesser included offense of the offense charged in the indictment if there is a reasonable theory from the evidence to support a conviction on such lesser included offense.  Brief of the Appellant, p. 13.  Criminally negligent homicide, a lesser included offense of murder, is committed when one causes the death of another by criminal negligence, which is defined in Section 13A-2-2(4) of the Code of Alabama as the failure "to perceive a substantial and unjustifiable risk that the result will occur."  This Court stated in <u>Williams v. State</u>, 518 So. 2d 888, 889 (Ala. Crim. App. 1987), "To

14

warrant giving an instruction on criminally negligent homicide, there must be some evidence that defendant inadvertently created a risk of which he was unaware." Criminally negligent homicide can be distinguished from reckless manslaughter by whether the defendant is aware of the risk created – whereas a person committing reckless manslaughter is aware of a substantial and unjustifiable risk and consciously disregards that risk, the person committing criminally negligent homicide is unaware of a risk that he or she should have been aware of.  Williams v. State, 506 So. 2d 368, 368 (Ala. Crim. App. 1986).

There was no evidence presented at trial to support a conviction for criminally negligent homicide.  The State's evidence, through the testimony of Jeanette Baker, supports only a conviction for murder.  According to Baker, Phillip Burden pointed the sawed-off shotgun gun at Jermiach "Rat" Foster and fired it immediately after Anthony Burden hit Foster and told Phillip to "Shoot the MF.  Bust them out. Shoot the SB."  (R. 170)  Under such an intentional killing, there is no room for a theory of criminal negligence.  Even under Burden's own testimony, there was likewise no evidence to support criminal negligence.

Burden testified that, after the fight between him and Shawn Baker had been broken up, he retrieved a sawed-off shotgun and returned to the scene, stalking up the street looking for Shawn Baker and wanting some "get back."  (R. 362)  Although Burden clearly created a substantial and unjustifiable risk, his own testimony shows only that he purposefully created such a risk.  There is no way under the evidence to construe the creation of the risk as inadvertent.  Furthermore, Burden's own testimony shows clearly that he was aware of the risk that he created.  As he proceeded up the street, he menacingly pointed the gun at Jeanette Baker.  (R. 351)  The fact that he did not know who he was pointing the gun at merely shows that he was unaware of who was subjected to the substantial and unjustifiable risk – not that he was unaware of the risk itself.  This Court stated in Robinson v. State, 441 So. 2d 1045, 1047 (Ala. Crim. App. 1983):

> One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence.

Burden's attempts to distinguish this case from Robinson are unavailing.  First, he claims that "the victim

16

nor anyone else posed the threat of imminent confrontation." Brief of the Appellant, p. 16. He ignores the fact that he, himself, "posed a threat of imminent confrontation" by proceeding up the road seeking revenge with a loaded shotgun in the midst of a crowd, recklessly pointing the gun at anyone who might try to interrupt him before even recognizing who he was aiming at hitting. Robinson covers precisely the situation created by Burden, one in which the actor may not have intended for the gun to discharge as it did but was aware of the substantial possibility of such a danger.

Burden also tries to distinguish this case from Robinson by pointing to evidence that he had been drinking alcohol before shooting Foster, indicating that intoxication could lower his level of intent from recklessness to criminal negligence. Brief of the Appellant, pp. 16-17. Even if there were sufficient evidence to show that he was intoxicated, however, such intoxication could not serve to lower his level of intent below recklessness. This Court stated in Williams, 506 So. 2d at 370:

> The fact that the defendant had several drinks before the fatal encounter with the victim did not

17

> entitle him to a charge on criminally negligent
> homicide.  Even if he had been intoxicated, that
> circumstance would not have been legally
> sufficient to render him unaware of the risk he
> created by drawing his pistol.  Ala. Code 1975,
> [Section] 13A-3-2(b).  ("When recklessness
> establishes an element of an offense and the actor
> is unaware of a risk because of voluntary
> intoxication, his unawareness is immaterial in a
> prosecution for that offense.")  Voluntary
> intoxication can never, therefore, reduce
> manslaughter to criminally negligent homicide.
> "Voluntary intoxication . . . cannot negate
> awareness of a risk, if recklessness is sufficient
> to establish the offense."  Ala. Code, 1975,
> [Section] 13A-3-2 (Commentary).

Therefore, the evidence that Burden drank alcohol before shooting Foster does not provide any basis for an instruction on criminally negligent homicide.

Burden cites Houston v. State, 798 So. 2d 704, 709 (Ala. Crim. App. 2000), as an example of a defendant being convicted of criminally negligent homicide when he retrieved a loaded weapon and entered a house in search of the victim before apparently shooting the victim when the weapon accidentally discharged.  In Houston, 798 So. 2d at 709, however, this Court merely held that evidence of such facts was sufficient to sustain a criminally negligent homicide conviction "at the very least."  The issue of whether an instruction on criminally negligent homicide was proper was never addressed and it is not clear whether

18

Houston even objected to the giving of such an instruction.
Therefore, Houston is immaterial to the issue presented in
this case.  Clearly, Burden's behavior of carrying a loaded
weapon up a street in search of revenge falls under
Robinson's holding that "[o]ne who intentionally draws a
gun in response to or in anticipation of a confrontation
with another is certainly aware of the risk that the gun
might discharge [and] cannot be guilty of mere criminal
negligence."  Robinson, 441 So. 2d at 1047.  Therefore, the
trial court's refusal to instruct the jury on criminally
negligent homicide was not an abuse of discretion.

19

## CONCLUSION

Based on the foregoing, Phillip Burden's conviction is due to be affirmed.

Respectfully submitted,

William H. Pryor Jr.
*Attorney General*

Robin Blevins Scales
*Assistant Attorney General*


John M. Porter
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify on this <u>27th</u> day of May, 2003, I

served a copy of the foregoing on the attorney for Burden,

by placing the same in the United States Mail, first class,

postage prepaid and addressed as follows:


      Gregory M. Varner
      P. O. Box 338
      Ashland, Georgia  36251


                John M. Porter
                Assistant Attorney GENERAL


ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama 36130-0152
(334) 242-7300


104925